The PENN CENTRAL CORP., Plaintiff,

v.

The WESTERN CONFERENCE
OF TEAMSTERS PENSION
TRUST FUND, Defendant.

No. C 93–3760 FMS.

United States District Court,
N.D. California.

Sept. 9, 1994.

R. Mark Solano, Lester Bryant Solano Pilgrim & Ganz P.C., Tulsa, OK, for Penn Cent. Corp., plaintiff.

Jennifer A. Wysong, Pillsbury Madison & Sutro, San Francisco, CA, for Western Con-

ference of Teamsters Pension Trust Fund, defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S COUNTER–MOTION FOR SUMMARY JUDGMENT

FERN M. SMITH, District Judge.

### ISSUE

This case involves employer withdrawal liability under the Employee Retirement Income Security Act ("ERISA") as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). ERISA §§ 4201–4402, 29 U.S.C. §§ 1381–1461. The issue the Court must decide here is whether employer withdrawal liability can be assessed against a control group for the previous withdrawal of two subsidiary corporations when the control group sells its remaining subsidiary corporation to a group that continues the required contributions to a pension fund on behalf of the remaining subsidiary corporation. The Court finds that liability can be assessed against the control group in this situation, and therefore denies plaintiff's motion for summary judgment and grants defendant's countermotion for summary judgment.

### BACKGROUND

The Western Conference of Teamsters Pension Trust Fund ("Fund") is a multiemployer pension fund which administers The Western Conference of Teamsters Pension Plan ("Plan"), a multiemployer plan described in ERISA § 4001(a)(3), 29 U.S.C. § 1301(a)(3). G.K. Trucking Corporation ("G.K. Trucking"), Marathon Steel Company ("Marathon Steel"), and Buckeye Gas Products Company ("Buckeye Gas") were corporations under the common control of Penn Central and participated in the Plan pursuant to various collective bargaining agreements from at least 1981 through December of 1986. In February of 1982, G.K. Trucking ceased operations under the Plan. Marathon Steel ceased operations under the Plan in March of 1986. Buckeye Gas continued to make contributions under the Plan until December of 1986 when Penn Central sold its interest in Buckeye Gas to Ferrell Companies, Inc., and Ferrellgas, Inc. ("Ferrell

Group"). Ferrell Group has continued to make the required contributions to the Fund.

In September of 1989, the Fund made a demand for payment of a complete withdrawal liability assessment in the amount of $60,618 against Marathon Steel and G.K. Trucking for their share of the Plan's vested benefit shortfall. The assessment did not include any vested benefit shortfall attributable to Buckeye Gas. Penn Central paid the assessed amount to the Fund and requested an arbitration proceeding to decide whether the withdrawal liability was properly assessed. The arbitration was conducted in 1993 and a decision in favor of the Fund was made. Penn Central instituted this action to vacate the arbitration award upholding the assessment against Penn Central.

### DISCUSSION

#### I. Legal Standard

In order to withstand a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. Fed.R.Civ.P. 56(e) (West 1994). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In the absence of such facts, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Since the parties here have stipulated to the material facts the sole issue before the Court is whether the arbitrator's award was correct as a matter of law.

#### II. Complete Withdrawal Liability Was Properly Assessed Against Penn Central Upon its Sale of Buckeye Gas to Ferrell Group

##### A. Withdrawal Liability Was not Assessable Against Penn Central When Marathon Steel and G.K. Trucking Ceased Operations Under the Plan

In February, 1982, G.K. Trucking ceased operations under the Plan. Marathon Steel

ceased operations under the Plan in March, 1986. Buckeye Gas, however, continued making contributions to the Fund under the Plan until and after its sale to Ferrell Group.

■ A complete withdrawal from a multiemployer pension plan generally occurs when an employer "permanently ceases all covered operations under the plan." ERISA § 4203(a), 29 U.S.C. § 1383(a) (1994). An employer that withdraws from a multiemployer pension plan is liable to the plan for its proportionate share of the fund's "unfunded vested benefits." ERISA § 4201, 29 U.S.C. § 1381 (1994). *See, e.g., Woodward Sand Co. v. Western Conference of Teamsters Pension Trust Fund*, 789 F.2d 691, 694–95 (9th Cir.1986). A withdrawing employer is thus required to compensate a pension plan for the difference between that employer's proportionate share of the present value of benefits that have already vested with a corporation's employees and the current value of the plan's assets attributable to that corporation. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725, 104 S.Ct. 2709, 2715, 81 L.Ed.2d 601 (1984). For purposes of determining whether a complete withdrawal has occurred under a plan, however, all trades or businesses under "common control" are treated as a single employer. ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1) (1994).

■ Here, it is undisputed that G.K. Trucking, Marathon Steel, and Buckeye Gas were under the common control of Penn Central until the sale by Penn Central of Buckeye Gas to the Ferrell Group. Prior to that sale, the cessation of operations under the Plan by G.K. Trucking and Marathon Steel generated a withdrawal liability of $60,-618 to the Plan. This sum was G.K. Trucking and Marathon Steel's proportional share of the Fund's vested benefit shortfall attributable to their employees and operations. Complete withdrawal liability was not assessable, however, at the time these two subsidiary corporations permanently ceased operations under the Plan because Penn Central, their parent and the "employer" under ERISA § 4001(b)(1), continued to contribute to the Fund on behalf of Buckeye Gas. By definition, then, Penn Central had not "per-manently cease[d] all covered operations under the plan." ERISA § 4203(a), 29 U.S.C. § 1383(a) (1994).

**B. The Sale of Buckeye Gas by Penn Central Properly Triggered the Fund's Assessment of Penn Central's Withdrawal Liability**

■ Penn Central maintains that complete withdrawal liability was improperly assessed against it because the event that triggered its assessment of liability, the sale of Buckeye Gas to Ferrell Group, was a covered restructuring under ERISA § 4218, 29 U.S.C. § 1398 (1994). Penn Central argues that the sale of Buckeye Gas should be viewed as an isolated transaction separate from Penn Central's previous activities involving G.K. Trucking and Marathon Steel. Under this theory, Penn Central ceased to exist as an employer under the Plan at the moment it sold Buckeye Gas solely because of the sale.

■ Close scrutiny of the statute does not bear out Penn Central's argument. The sale of a subsidiary corporation by an "employer" to an unrelated purchaser that continues to make contributions to the plan ordinarily does not constitute withdrawal from a plan. *See* PBGC Opinion Letter 92–1 at 3. ERISA § 4218 provides:

> Notwithstanding any other provision of this part, an employer shall not be considered to have withdrawn from a plan solely because—
>
> (1) an employer ceases to exist by reason of—
>
> > (A) a change in corporate structure described in section 1369(b) of this title, or
> >
> > (B) a change to an unincorporated form of business enterprise,
> >
> > if the change causes no interruption in employer contributions or obligations to contribute under the plan, or
>
> (2) an employer suspends contributions under the plan during a labor dispute involving its employees.
>
> For purposes of this part, a successor or parent corporation or other entity result-

ing from any such change shall be considered the original employer.

ERISA § 4218, 29 U.S.C. § 1398 (1994). Similarly, if an employer is a parent corporation or control group with control over multiple plan participants, the sale of one subsidiary, i.e. a covered restructuring, alone would not constitute withdrawal. The statute, however, does not prevent assessment of withdrawal liability where other actions by the employer transform what would otherwise be a covered restructuring into a complete cessation of the employer's operations under the plan. That much is clear from Congress' decision to limit section 4218's corporate restructuring exception to employer withdrawals based "solely" on a change in corporate structure. *Id.*

Here, it was only after G.K. Trucking and Marathon Steel had already ceased all operations under the Plan that Penn Central sold its last subsidiary corporation left participating in the Plan, Buckeye Gas, to Ferrell Group which continued to make Buckeye Gas's required contributions to the Fund. With this sale, common ownership of G.K. Trucking, Marathon Steel and Buckeye Gas was severed, and Penn Central ceased to exist as the employer. Thus, it can scarcely be contested that Penn Central's withdrawal was not due "solely" to the sale of Buckeye Gas. Following the sale, the Fund sent to Penn Central a notice and demand for payment of a complete withdrawal liability assessment in the amount of $60,618. Significantly, the Fund's assessment was based upon the contribution histories of G.K. Trucking and Marathon Steel only and did not include the contribution history of Buckeye Gas which continued to make its required contributions under Ferrell Group.[1]

■ This interpretation of the statute and the propriety of the Fund's assessment of withdrawal liability against Penn Central is confirmed by ERISA's objective "to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulat-

ed in [them]." *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California,* ——— U.S. ———, ——— – ———, 113 S.Ct. 2264, 2271–72, 124 L.Ed.2d 539 (1993) (quoting *Connolly v. Pension Benefit Guaranty Corporation,* 475 U.S. 211, 214, 106 S.Ct. 1018, 1020, 89 L.Ed.2d 166 (1986)). In particular, the withdrawal liability rules were enacted to ensure that each withdrawing employer " 'would be required to pay whatever share of the plan's unfunded liabilities was attributable to that employer's participation.' " *Id.* ——— U.S. at ———, 113 S.Ct. at 2272 (quoting *Connolly,* 475 U.S. at 216, 106 S.Ct. at 1021). Under Penn Central's argument, Penn Central would temporarily escape withdrawal liability when G.K. Trucking and Marathon Steel ceased operations because of the continued contributions of Buckeye Gas, a member of the Penn Central control group. It would then permanently escape withdrawal liability for G.K. Trucking and Marathon Steel because the sale of Buckeye Gas was protected by section 4218. The net effect of allowing Penn Central to completely escape withdrawal liability would be to increase the contribution rate for remaining employers "in order to fund ... liabilities generated by employers no longer participating in the plan." *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 722 n. 2, 104 S.Ct. 2709, 2714 n. 2, 81 L.Ed.2d 601 (1984). The danger in allowing employers to permanently escape withdrawal liability is that the "vicious downward spiral may continue until it is no longer reasonable or possible for the pension plan to continue." *Id.*

Accordingly, the Court finds that the withdrawal liability of Penn Central was thus assessed at the end of a sequence of events that began with the cessation of operations under the Plan by G.K. Trucking and Marathon Steel and concluded with the sale of Buckeye Gas to Ferrell Group. The withdrawal liability is therefore not due solely to the sale of Buckeye Gas as Penn Central contends, *c.f.* ERISA § 4218, 29 U.S.C. § 1398 (1994), but to the net effect of a series

---

1. Penn Central's liability is properly determined by apportioning the contribution history of Penn Central among its subsidiaries and subtracting out Buckeye Gas's contribution. PBGC Opinion Letter 92–1 at 4.

of transactions that, altogether, resulted in the severance of Penn Central's common ownership of all three corporations and the appropriate assessment of withdrawal liability. *See* PBGC Opinion Letter 92–1 at 4–5.

## C. PBGC Opinion Letter 92–1 Confirms this Result

Penn Central contends that PBGC Opinion Letter 92–1: (a) should be given no weight by this Court, (b) is inapplicable to the facts here, or (c) is supportive of Penn Central's view that withdrawal liability should not be assessed.

"[T]he determination of the PBGC ... is entitled to great deference in the construction and application of ERISA." *Connolly v. Pension Benefit Guaranty Corp.*, 581 F.2d 729, 730 (9th Cir.1978). "Even if reasonable minds could differ as to the proper interpretation of the statute, we would be obligated to follow the interpretation in the PBGC ruling because of the deference owed to its rulings and opinions." *H.C. Elliott v. Carpenters Pension Trust Fund for Northern California*, 859 F.2d 808, 813 (9th Cir.1988), *cert. denied*, 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 406 (1989). PBGC Opinion Letter 92–1 is not inconsistent with either the statute or the case law interpreting these specific provisions of ERISA and will be given deference in this case.

PBGC Opinion Letter 92–1 addresses a hypothetical situation closely analogous to the facts presented herein. *See* PBGC Opinion Letter 92–1. The hypothetical begins with a parent corporation with multiple subsidiaries each contributing to a multiemployer pension plan. *Id.* at 1. These subsidiaries, at various times, either ceased operations or ceased to be controlled by the parent, and the parent eventually ceased covered operations completely. *Id.* The opinion letter then instructs how the transactions should be analyzed with respect to the assessment of withdrawal liability. *Id.* at 2. The Opinion Letter notes that a decline in total contributions to a plan "could be due, at least in part, to closing [one subsidiary corporation] and selling the assets of [another subsidiary corporation]." *Id.* at 4. "Whether a decline in contributions is solely because of a covered restructuring must be determined on the facts and circumstances of each case." *Id.* at 5.

The language of PBGC Opinion Letter 92–1 is supportive of the Fund's view that complete withdrawal liability was properly assessed against Penn Central. The PBGC Opinion Letter notes that whether the decline was solely because of the restructuring is a matter of facts and circumstances. *Id.* "Relevant considerations might include the length of time between transactions, whether the transactions were related, and whether each transaction would have been subject to Section 4218 if viewed individually." *Id.* Here, the sale of Buckeye Gas to Ferrell Group is certainly subject to section 4218 analysis when viewed individually. *See* ERISA § 4218, 29 U.S.C. 1398 (1994). The cessation of operations by G.K. Trucking and Marathon Steel, however, were not subject to section 4218 analysis at the time they occurred but were protected from withdrawal liability by their common ownership with Buckeye Gas which continued its required contributions. *See* ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1) (1994). Since the sale of Buckeye Gas was the only "transaction" by Penn Central in this series of events that was subject to section 4218 analysis, it is clear that the control group did not cease to exist "solely" because of the sale and Penn Central's liability was properly assessed.

For all the reasons given, the assessment of complete withdrawal liability against Penn Central for G.K. Trucking and Marathon Steel's cessation of operations was properly triggered by Penn Central's sale of Buckeye Gas.

## III. The Fund Should be Awarded Its Attorney's Fees and Costs

Under ERISA, the Court shall award reasonable attorney's fees and costs to a fiduciary in an action to collect employer withdrawal liability. 29 U.S.C. § 1132(g). In this case, the Fund has prevailed in an action brought by Penn Central for the refund of the withdrawal liability assessment that was paid by Penn Central prior to the arbitration proceeding. The Fund, acting "on behalf of a plan" under ERISA, is there-

fore entitled to attorney's fees and costs as the prevailing party. *Id.*

## CONCLUSION

For all the reasons herein set forth, the Court denies plaintiff's motion for summary judgment and grants defendant's countermotion for summary judgment. Attorney's fees and costs are awarded to the Fund.

SO ORDERED.